**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 26, 2012

LETTER TO COUNSEL:

      RE:    *Kathleen Quesenberry v. Commissioner, Social Security Administration*;
              Civil No. SAG-11-2822

Dear Counsel:

      On October 3, 2011, the Plaintiff, Kathleen Quesenberry, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Ms. Quesenberry's response to the Commissioner's motion. (ECF Nos. 13, 15, 20). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

      Ms. Quesenberry filed her claim on January 12, 2006. (Tr. 19). She alleged that she became disabled on September 27, 2005. (Tr. 19). Her claim was denied initially on September 26, 2006, and on reconsideration on January 2, 2007. (Tr. 19). A hearing was held on January 15, 2008 before an Administrative Law Judge ("ALJ"). (Tr. 19). Following the hearing, on May 27, 2008, the ALJ determined that Ms. Quesenberry was not disabled. (Tr. 19). The Appeals Council vacated the ALJ's decision and remanded for further proceedings. (Tr. 19). On remand, the ALJ held another hearing on May 13, 2010. (Tr. 19). The ALJ again determined that Ms. Quesenberry had not been disabled at any time since September 27, 2005 (Tr. 20). This time, the Appeals Council denied Ms. Quesenberry's request for review (Tr. 7), so the ALJ's decision constitutes the final, reviewable decision of the agency.

      The ALJ found that Ms. Quesenberry suffered from several severe impairments, including obesity, diabetes mellitus, diabetic retinopathy, shoulder impairments, and lumbar degenerative disc disease. (Tr. 22). Despite these impairments, the ALJ determined that Ms. Quesenberry retained the residual functional capacity ("RFC") to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she could occasionally climb a ramp or stairs, balance, stoop, kneel, crouch and crawl but never climb a ladder, rope or scaffold, frequent pushing and pulling with the lower extremities, frequent pushing and pulling and working overhead with the right upper extremity, no distance viewing and avoiding exposure to hazards.

(Tr. 33).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Quesenberry can perform jobs that exist in significant numbers in the national economy, and that she is therefore not disabled.  (Tr. 41).

Ms. Quesenberry presents two arguments on appeal.  First, she contends that the ALJ failed to adequately evaluate her obesity.  Second, she contends that the RFC determination made by the ALJ is not supported by substantial evidence.  Both arguments lack merit.

In support of her first argument, Ms. Quesenberry notes that the ALJ failed to mention that her obesity is "extreme," and that the ALJ never referenced her obesity in Step 3 of the Sequential Evaluation Process.  In Step 3, the ALJ considers whether the claimant's "impairment or impairments, either severally or in combination, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."  *Huntington v. Apfel*, 101 F. Supp. 2d 384, 387 (D. Md. 2000).  Typically, the ALJ must compare the claimant's impairments and symptoms to the listing criteria.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  However, such a comparison is unnecessary unless there is "ample evidence in the record to support a determination" that the claimant's impairments meet or equal one of the listed impairments.  *Id.* at 1172; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999).

Here, the ALJ did not mention Ms. Quesenberry's obesity or compare her obesity symptoms to the impairment listings in the Step 3 analysis.  (Tr. 32-33).  However, the ALJ considered a wide range of impairment listings, analyzed each of Ms. Quesenberry's impairments at great length throughout the opinion, indicated that Ms. Quesenberry's obesity was considered in conjunction with these impairments, and found that none of her impairments rose to the level of a listed impairment.  (Tr. 38).  The ALJ also found that Ms. Quesenberry's "longitudinal medical history does not support a finding of disability related to the claimant's obesity . . . ."  (Tr. 34).  Moreover, the ALJ notes that

> As indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments.  For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart.  Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone.  In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule.  These considerations have been taken into

account in reaching the conclusions herein.

(Tr. 38).   This shows that the ALJ specifically considered obesity in conjunction with other impairments.

There is no evidence in the record that suggests that Ms. Quesenberry's obesity alone or obesity combined with other impairments rises to the level of a listed impairment.  A review of Ms. Quesenberry's medical records reveals almost no discussion of Ms. Quesenberry's obesity and its impact on her ability to function.  As such, while the ALJ did not engage in a prolonged comparison of the listed impairments and Ms. Quesenberry's obesity in Step 3, no such comparison was needed given the dearth of evidence in the record to support a finding that Ms. Quesenberry's obesity contributed to or equaled any listed disability.  *See Cook*, 738 F.2d at 1172; *Ketcher*, 68 F. Supp. 2d at 645.

Ms. Quesenberry's second argument, regarding the purported insufficient support for the ALJ's RFC finding, is similarly deficient.  Specifically, Ms. Quesenberry argues that the ALJ's determination that she can perform sedentary work improperly relied on Dr. Serpick's medical opinion because Dr. Serpick is a non-treating, non-examining physician, and his report was given before the majority of the medical evidence in this case was obtained.  Instead, Ms. Quesenberry argues, the ALJ should have relied on the reports of Dr. Manubay, a consultative examiner, and Dr. Pfaff, a treating physician, who both opined that Ms. Quesenberry cannot perform sedentary work.  This argument is without merit.

As for Dr. Pfaff, a treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Dr. Pfaff opined that Ms. Quesenberry could: lift no weight; stand or walk for one hour; sit for three hours; never climb, balance, stoop, crouch, crawl, and kneel.  (Tr. 414-15).  Dr. Pfaff also believed that Ms. Quesenberry's ability to reach, handle, feel, push, and pull were affected, and that she should avoid heights, moving machinery, and temperature extremes (Tr. 415).  The ALJ assigned "little weight" to Dr. Pfaff's opinions because his opinions were partially based on Ms. Quesenberry's lumbar degenerative disc impairment that had not met the durational requirement.  (Tr. 40).  Ms. Quesenberry's lumbar disc symptoms were first felt in or around September, 2009 (Tr. 420) and she testified as to these symptoms in May, 2010, falling several months short of the twelve month durational requirement.  20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least twelve months.").  The ALJ also gave little weight to Dr. Pfaff's opinions on reaching, handling, feeling, pushing, and pulling because Dr. Pfaff's support for his opinions merely consisted of noting "pain" and "MRI," and the MRIs did not even confirm the presence of calcifications or rotator cuff tears.  (Tr. 40, 419).

Moreover, Dr. Pfaff's findings that Ms. Quesenberry could only stand or walk for one hour a day and sit for three hours a day are also unsupported.  Dr. Pfaff's notes indicate that Ms. Quesenberry was "negative for chest pain, [and] shortness of breath," and that she walks with a

"nonantalgic gait using no assistive devices." (Tr. 416, 422). Aside from these references, there is virtually no discussion or mention of Ms. Quesenberry's difficulties walking or sitting. (Tr. 416-24).[1] As such, the ALJ properly assigned weight to Dr. Pfaff's opinion.

Similarly, examining physician opinions, like that of Dr. Manubay, may be assigned less weight if they are unsupported or inconsistent with the record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(C)(3)(4). Dr. Manubay found that Ms. Quesenberry could sit for two hours, stand for 15 to 20 minutes, walk for 15 steps, and carry up to five pounds on the left. (Tr. 271). This diagnosis, as the ALJ noted, is unsupported by the record. While opining that Ms. Quesenberry cannot walk more than 15 steps because she gets "somewhat tired and short of breath," Dr. Manubay notes in the same report that Ms. Quesenberry has "[n]o shortness of breath on exertion." (Tr. 269-71). Along with this inconsistency, Dr. Manubay does not identify any issue that would limit Ms. Quesenberry's ability to walk to 15 steps other than Ms. Quesenberry's self-reported symptoms, her possible diabetic nephropathy, which she has never been diagnosed with, and a healing ulcer on her foot. (Tr. 39, 267-71).

Dr. Manubay also opined that Ms. Quesenberry was limited to carrying five pounds on the left, even though he found no impairment affecting Ms. Quesenberry's left arm or shoulder. (Tr. 39, 267-71). As for her right arm, Ms. Quesenberry has a history of rotator cuff repairs and calcific tendinitis, and although there was no evidence of a rotator cuff or labral tear in September, 2009, this history apparently causes pain when she engages in overhead activities. However, there is no evidence that suggests, as Dr. Manubay does, that Ms. Quesenberry cannot lift any weight with her right arm, as long as it is not overhead lifting. As such, the ALJ allotted appropriate weight to Dr. Manubay's opinion.

Ms. Quesenberry's arguments stem from her belief that the ALJ's RFC was unsupported relating to her ability to lift items, stand, walk, and sit. *See* Pl.'s Mot. at 15. However, Dr. Serpick's opinion, on which the ALJ relied the most for Ms. Quesenberry's ability to lift items, stand, walk, and sit, appears to be most consistent with the record. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (providing that an ALJ may afford greater weight to an opinion that is consistent with the record as a whole). The ALJ reviewed the entire record, including the claimant's testimony and treatment notes, in great detail in the RFC determination. (Tr. 34-41). The ALJ has cited substantial evidence that Ms. Quesenberry is able to lift up to ten pounds, stand or walk for up to two hours of an eight hour work day, and sit for six hours of an eight hour work day as a sedentary RFC requires. SSR 83-10, 1983 WL 31251, at *5.

---

[1] Ms. Quesenberry did have a lumbar degenerative disk impairment resulting in back pain and radiation down to her legs. As noted, this impairment did not meet the twelve month durational requirement as her pain allegedly began in September, 2009, and the hearing took place in May, 2010. Moreover, even considering this impairment, there was no numbness, tingling, or swelling, she was able to complete the straight leg raise, and her bilateral ankle and lumbar spine range of motion was full. (Tr. 418). As such, Dr. Pfaff's evaluations are devoid of support for the notion that Ms. Quesenberry could not walk for more than one hour a day and sit for three hours.

*Kathleen Quesenberry v. Commissioner, Social Security Administration*
Civil No. SAG-11-2822
October 26, 2012
Page 5


      For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 13) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED.  The Clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion.  An implementing Order follows.


      Sincerely yours,

       /s/

      Stephanie A. Gallagher
      United States Magistrate Judge